**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
ANGELICA PARKER,                              :
                                              :
                Plaintiff,    :    Civil Action No. 1:24-cv-04813
                                              :    (LAK)
      v.                              :
                                              :
TAL ALEXANDER, ALON ALEXANDER and             :
OREN ALEXANDER,                               :
                                              :
                Defendants.   :
------------------------------------------------------------ X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TAL
ALEXANDER'S MOTION JUDGMENT ON THE PLEADINGS**

 

**WIGDOR LLP**

Michael J. Willemin
Brooke Payton (admission pending)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
bpayton@wigdorlaw.com

*Counsel for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.     THE VGMVPL .......................................................................................................2

II.    THE CVA AND ASA ............................................................................................3

III.   THE VGMVPL AMENDMENTS ARE NOT PERMITTED BY THE CVA
      AND/OR ASA ........................................................................................................4

IV.   THE RELEVANT CASELAW ON THE ISSUE SUPPORTS PLAINTIFF'S
      POSITION ..............................................................................................................6

V.    BELLINO V. TALLARICO IS NOT CONTROLLLING ....................................10

CONCLUSION...................................................................................................................11

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                       **Page(s)**

Bellino v. Tallarico,
    No. 24 Civ. 0712 (LAK), 2024 WL 1344075 (Feb. 21, 2024) ................................................. 10

Doe v. Black,
    No. 23 Civ. 6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024) ........................ 6, 7, 8

Doe v. Gooding,
    No. 20 Civ. 06569 (PAC), 2022 WL 1104750 (S.D.N.Y April 13, 2022) ........................... 9,10

Engelman v. Rofe,
    144 N.Y.S.3d 20 (1st Dep't 2021) ................................................................................. 7, 8, 9

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
    739 F.3d 45 (2d Cir. 2013) ................................................................................................... 9

**Statutes**

N.Y. Code § 10 ............................................................................................................................. 9

**Rules**

CPLR § 214 ................................................................................................................. 3, 4, 5, 6, 7

CPLR § 201 ................................................................................................................................. 7

CPLR §§ 215(3) and 214(2) ..................................................................................................... 7, 9

**Other Authorities**

N.Y.C. Admin. Code §§ 10-1104 ................................................................................................. 2

## PRELIMINARY STATEMENT

Plaintiff Angelica Parker ("Plaintiff" or "Ms. Parker") submits this Memorandum of Law in Opposition to Defendant Tal Alexander's ("Defendant" or "Tal") Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. R. 12 (C) ("Def's Br."). For the following reasons, Plaintiff respectfully requests that Defendant's motion be denied in its entirety.

## BACKGROUND

In 2012, Plaintiff began a relationship with Oren Alexander. Dkt. No. 1-1 at ¶ 16. In the fall of 2012, Oren invited her to his home that he shared with his brothers, Alon and Tal. Id. at ¶ 17. Plaintiff brought her friend, YL. Id. at ¶ 18. Defendants offered Plaintiff and YL ecstasy, but they declined. Id. at ¶ 19. Alon made drinks for the women, proceeded to start hitting on YL and began to grope her. Id. at ¶ 20. YL became extremely uncomfortable and afraid, so she left the apartment. Id. at ¶ 21. However, she was fearful for Plaintiff, so she stayed in a stairwell of the apartment building. Id. After YL left, Plaintiff was brutally raped by Tal and Alon while Oren watched. Id. at ¶ 22. This was a coordinated sexual assault that was planned, facilitated and executed by Oren and his brothers. Id. at ¶¶ 23, 25.

This attack was not the first time that Defendants have been accused of sexually assaulting women. Id. at ¶¶ 34-43. In fact, Oren and Alon are currently facing two other lawsuits that describe eerily similar assaults as the one that Plaintiff experienced. Id. In the first suit, Plaintiff Kate Whiteman alleged that Oren and Alon took her against her will to a house where, according to the Complaint, she was "sexually assaulted, abused, raped, pinned, groped, harassed, battered, and fondled by defendants Alon and Oren." Id. In the second suit, Plaintiff Rebecca Mandel alleged that Alon and Oren spiked her drink, took her to an apartment, held her down and raped her together. Id.

1

Since the filing of this action, dozens of additional women have come forward with harrowing accounts of being raped by one or more of the Alexander brothers.  See Bridget Read and John Walsh, *Everyone in Real Estate Knew About the A-Team*, N.Y. Magazine, Aug. 12, 2024, https://www.curbed.com/article/oren-alexander-tal-alexander-brothers-luxury-real-estate.html; Debra Kamin, *These Brothers Were Real Estate Hotshots. And Predators, Some Women Say*, N.Y. Times, Jul. 26, 2024, https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.  Moreover, it has been widely reported that the Federal Bureau of Investigation is investigating the Alexander brothers for sex offenses dating back to their time in high school.  See Emily Glazer and Katherine Clarke, *FBI Probing Rape Allegations Against Star Real-Estate Brokers*, Wall Street Journal, Jul. 8, 2024, https://www.wsj.com/us-news/fbi-probing-rape-allegations-against-star-real-estate-brokers-482fbab9; Anna Conkling, *Millionaire Realtor Brothers Probed by FBI Over Rape Allegations*, Daily Beast, Jul. 09, 2024, https://www.thedailybeast.com/millionaire-realtor-alexander-brothers-probed-by-fbi-over-rape-allegations; Bridget Read and John Walsh, *Everyone in Real Estate Knew About the A-Team*, N.Y. Magazine, Aug. 12, 2024, https://www.curbed.com/article/oren-alexander-tal-alexander-brothers-luxury-real-estate.html.

## ARGUMENT

**I.      THE VGMVPL**

In 2000, the New York City Council adopted the Victims of Gender-Motivated Violence Protection Law ("VGMVPL") to create a civil cause of action for a "crime of violence motivated by gender."  N.Y.C. Admin. Code §§ 10-1104-1105(a).  The law required that a claim be asserted "within seven years after the alleged crime of violence motivated by gender occurred." Id.  The law provides for specific types of relief, like compensatory and punitive damages,

injunctive and declaratory relief, attorneys' fees and costs and other remedies as a court may deem appropriate.  Id.  Ultimately, in 2022, the New York City Council amended the VGMVPL to revive claims that had already expired, so long as those claims were filed between March 1, 2023 to March 1, 2025.  Id.

It should be noted that the 2022 amendment was not passed for the sole purpose of extending a statute of limitations.  The 2022 Amendment also changed the category of potential defendants liable under the law, from "individual" to "party," thereby opening up liability for non-individuals that "commit[ ], direct[ ], enable[ ], participate[ ] in, or conspire[ ] in the commission of a crime of violence motivated by gender."  Nothing about the Amendment changes the fact that the VGMVPL constitutes its own cause of action, *separate and apart from any common law or other statutory claims*, under which plaintiffs like Ms. Parker may bring claims.

## II.    THE CVA AND ASA

As noted by Defendant, the Child Victims Act ("CVA") was enacted by the New York State Legislature in 2019, reviving the statute of limitations for civil claims related to sexual offenses committed against minors.  New York State Civil Practice Laws and Rules ("CPLR") § 214-g.  The CVA had originally allowed previously expired claims to be commenced between August 14, 2019 and August 14, 2020, but the lookback was extended to August 14, 2021 due to the COVID-19 pandemic.  Id.  Then, in May 2022, the State Legislature enacted the Adult Survivors Act ("ASA"), which paralleled the CVA except that it applies to sexual offenses committed against persons 18 years or older at the time of the offense.  See CPLR § 214-j.  The Adult Survivors Act window closed in November 2023.  Id.

3

### III. THE VGMVPL AMENDMENTS ARE NOT PREEMPTED BY THE CVA AND/OR ASA

In passing the CVA and ASA, the State Legislature never evinced an intent to make those statutes the exclusive remedy for people with time barred claims for sexual assault, and they certainly did not demonstrate an intent to make those statutes the exclusive remedy for people with time barred claims under the VGMVPL.  Indeed, the behaviors covered by, on the one hand, the VGMVPL, and, on the other, the CVA and ASA, do not even fully overlap.  The VGMVPL prohibits all gender motivated violence in New York City.  The CVA and ASA apply only to claims involving sexual assault and, critically, did not actually create any causes of action, let alone one that even could preempt the VGMVPL given the differing subject matters.

Moreover, the CVA and ASA specifically state that they apply "[n]otwithstanding any provision of law which imposes a period of limitation to the contrary."  Id.  Defendant's attempted reliance on this language demonstrates their fundamental misunderstanding of what it means, arguing that it somehow prohibited the City Council from extending the statute of limitations for claims under the VGMVPL.  To the contrary, the proper reading of the quoted language is that the State Legislature wanted to make clear that claims covered by the CVA or ASA would be revived notwithstanding the existence of any provision of law with a *more restrictive* limitations period.  The CVA and ASA were not intended to limit a plaintiff's ability to bring a timely claim under a law, such as the VGMVPL, with a *less restrictive* limitations period.

Indeed, New York State Senator Brad Hoylman-Sigal ("Senator Hoylman") recently signed an affidavit on this point.  Declaration of Michael J. Willemin, Ex. A.  The affidavit of Senator Hoylman, who was a sponsor of both the CVA and ASA, as well as the Adult Survivors Act ("ASA"), CPLR § 214-j, offers unique insight into the legislative process that led to the

passage of the CVA, as well as the legislative intent and understanding behind it. As is abundantly clear from Senator Hoylman's affidavit, not only was the CVA never intended to preempt any other laws, including the VGMVPL, but in addition, there are recent proposed amendments to the CVA which would <u>eliminate completely</u> the statute of limitations on civil claims brought pursuant to the CVA. <u>See</u> Hoylman Aff. ¶¶ 11-13. Thus, rather than providing an exclusive window that preempts city law, the legislative intent behind the CVA (which uses the same language as the ASA) is to provide the broadest possible protections to individuals who were sexually assaulted throughout New York, including New York City. <u>Id.</u> ¶¶ 7-8 ("The plain language of the CVA [identical to that of the ASA] makes clear that the legislative intent in August 2019 was, and remains, not to preempt other laws. This includes the VGMVPL, which was enacted and in place years prior to enactment of the CVA [or ASA].").

The Defendant's attempt to contort the CVA and ASA – both of which were passed to increase opportunities for victims of sexual assault to seek redress – into laws that prevent victims of gender motivated violence from seeking redress. This is not the law, which is clear from the countless legal commentaries regarding the 2022 VGMVPL Amendment, for example:

> Though the VGMVPL amendment is a revival statute like the ASA, the VGMVPL creates an independent cause of action under which a plaintiff has the right to sue, whereas the ASA only revives expired claims available under other laws. Because the VGMVPL creates its own cause of action, it provides for specific types of relief, including compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as a court may deem appropriate. In contrast, the relief available under an action authorized by the ASA is limited to the remedies provided for under the primary law.[1]

---

[1]   <u>See</u> Nicholas J. Pappas, Ami. G Zweig, and Elizabeth Casey, *New York Enacts Revival Statutes, Renewing Expired Claims for Sexual Assault*, Weil, Gotshal & Manges LLP, Aug. 2022, https://www.weil.com/-/media/mailings/employer_update_august-2022.pdf.

(internal citations omitted).  Thus, despite Defendant's insistence, the State Legislature has not assumed full regulatory responsibility over all claims of sexual assault in New York.  Indeed, the CVA and ASA literally cannot fully occupy even the sexual assault field – much less the much broader gender motivated violence field – because neither statute creates a cause of action.

**IV.     THE RELEVANT CASELAW ON THIS ISSUE SUPPORTS PLAINTIFF'S POSITION**

Significant and persuasive judicial precedent has already disposed of Defendant's unpersuasive and nonsensical arguments.  Most recently, Judge Jessica G. L. Clarke addressed virtually the exact issue presented here and determined that the CVA did not preempt the VGMVPL.  Doe v. Black, No. 23 Civ. 6418 (JGLC), 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024).  Judge Clarke's decision was lengthy and well-reasoned.  Initially, Judge Clarke held that field preemption did not exist because: (i) the state did not evidence an intend to occupy the field in connection with sexual offense statute of limitations; and (ii) the CVA is not a comprehensive and detailed regulatory scheme.  Id. at *5 (rejecting the same argument as that made by Defendant herein, and holding that "the CVA does not come close to enacting a comprehensive scheme").  Both points are equally true for the ASA as well.  In coming to this determination, Judge Clarke considered and rejected every argument made by Defendant herein.  Finally, Judge Clarke again rejected every argument made by Defendant herein in determining that the CVA did not conflict with the VGMVPL.  Id. at *6-7 ("Here, the VGMVPL Revival Statute does not curtail or take away a right or benefit expressly given by the state.  The VGMVPL Revival Statute does not act to prevent anyone from filing a claim under the CVA . . . There is also no "head-on collision" between the CVA and the VGMVPL Revival Statute because they further the same goals. They were both enacted to further civil rights causes of action.").

In addition to the decision in Black, prior decisions on related issues support Plaintiff's position. Despite being on notice of the decision in Engelman v. Rofe, 144 N.Y.S.3d 20 (1st Dep't 2021) from earlier briefing in this matter, Defendant fails to even acknowledge this important case. In Engelman, the Appellate Division addressed the issue of whether the VGMVPL's seven-year statute of limitations was preempted by the statutes of limitations for assault and battery under New York State law, specifically, CPLR §§ 215(3) and 214(2). First, the court distinguished between the conduct targeted by the VGMVPL compared to that targeted by the CPLR, finding that:

> [T]he legislative intent of the VGM was to create a civil rights remedy or cause of action such as in [the federal Violence Against Women Act], rather than to extend the statute of limitations for a particular class of assaults [as in the CPLR].

144 N.Y.S.3d at 25-26. Second, the court focused on the clear rule in New York that local antidiscrimination laws like those enacted by the New York City Council are generally not preempted by state law, noting that "[t]he VGM's construct is consistent with the City's 'broad policing power' to enact legislation to protect its residents from discrimination, including gender-related violence." Id. at 25. Following these principles, the court in Engelman held that the VGMVPL was not preempted by the CPLR's limitations contained in § 215(3) and § 214(2). This was particularly true in light of CPLR § 201, which states that all of the times listed in CPLR Article 2 apply "unless a different time is prescribed by law." As the Engelman court held, therefore, "**[i]nasmuch as the VGM itself provides a different time than that prescribed in CPLR 214(2), the time prescribed in the VGM controls**." Id. at 26 (emphasis added).

7

Given that Defendant was unquestionably unaware of the decision in Engelman, it is clear that he failed to address it in his moving brief in the hopes of addressing it in his reply, thereby denying Plaintiff the opportunity to respond. Some defendants have argued that Engelman is distinguishable on the basis that it did not specifically address the 2022 Amendment to the VGMVPL. However, the Engelman court held that the purpose of the VGMVPL, by its very nature, was to create a civil remedy for victims of gender motivated violence and that the lengthier applicable statute of limitations was merely incidental to that fundamental purpose:

> Based on the foregoing, we find that the legislative intent of the VGM was to create a civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of limitations for a particular class of assaults. Since the nature of the claim is for a civil rights violation (providing a remedy for those subjected to violence because of their gender), the seven-year limitations period provided in the Administrative Code is not preempted by the CPLR statute of limitations for assault claims.

144 N.Y.S.3d at 25-26. While the 2022 Amendment to the VGMVPL did have an impact on the relevant limitations periods, it too was not fundamentally a statute created for the purpose of extending the statute of limitations. Indeed, the 2022 updates to the VGMVPL included not just a change to the statute of limitations, but also, as noted *supra* at p. 6 other changes that collectively were designed to facilitate the purpose of the statute. There is no reason not to apply the sound logic of Engelman to the Amendment, and therefore the Court should similarly find that the VGMVPL is not preempted by the CVA or ASA. Moreover, even if Engelman is not controlling on this issue, it is persuasive on the issue of preemption. See Black, 2024 WL 4335453, at *7 ("Furthermore, as *Engelman* recognized, the VGMVPL is consistent with the City's broad policing power to enact legislation to protect its residents from gender-related violence. *Engelman*, 144 N.Y.S.3d at 23. Preventing the City from enacting its own deadline to file a claim under its own law to protect its residents, risks rendering that power illusory.").

8

The decision in Doe v. Gooding, No. 20 Civ. 06569 (PAC), 2022 WL 1104750 (S.D.N.Y April 13, 2022), is also instructive. In Gooding, the plaintiff commenced her action on August 18, 2020, asserting a single cause of action pursuant to the VGMVPL based on her allegation that the defendant had sexually assaulted her on August 24, 2013. The statute of limitations for bringing a claim under the VGMVPL is seven years, and thus she had filed timely. See N.Y. Code § 10-1105(a) ("A civil action under this chapter shall be commenced within seven years after the alleged crime of violence motivated by gender occurred."). The defendant in Gooding contended that the action should be dismissed because the VGMVPL, a New York City statute, conflicted with CPLR § 215(3), a New York State law. The court in Gooding held that the First Department's decision in Engelman was controlling precedent:

> [T]he Court defers to the appellate court's holding that the VGM's seven-year statute of limitations is not preempted. The First Department in *Engelman* is the only Appellate Division to have considered the issue, and there is no indication that New York's Court of Appeals would decide otherwise.

Gooding at *2 (citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 739 F.3d 45, 48 (2d Cir. 2013) ("instructing federal district courts to defer to state intermediate appellate courts unless there are 'persuasive data' that the state's highest court would disagree")). Further, the Gooding court held that Engelman reached the correct result, reasoning:

> [Defendant's] suggestion that the First Department overlooked principles of preemption law (that the lower court did not) is without merit. To the contrary, *Engelman* rejected the exact argument that Defendant resurrects here: that the CPLR implicitly preempts the VGM, even if it does not do so expressly. The VGM has been on the books for over two decades since its passage in 2000, and Defendant has identified nothing that the state legislature has done during those decades—either expressly or implicitly—to preempt the VGM's statute of limitations or bring it under the ambit of the CPLR.

9

Id. at *3 (citations omitted). Similarly, in the nearly two years since the 2022 Amendments were passed, the New York Legislature has taken no steps to preempt those amendments, nor has any statement been issued by the Legislature to suggest that the 2022 Amendments are preempted by the CVA or ASA.

## V. BELLINO V. TALLARICO IS NOT CONTROLLING

Naturally, Defendant's rely heavily on Your Honor's unpublished decision in Bellino v. Tallarico, No. 24 Civ. 0712 (LAK), 2024 WL 1344075 (Feb. 21, 2024). We respectfully submit that the decision in Bellino is not controlling for various reasons. First, the decision in Bellino was on a motion to dismiss that was ***unopposed***. As such, the Court did not have the benefit of the arguments made herein – indeed, it did not have the benefit of any arguments at all. Second, to the extent that Your Honor's decision in Bellino found that the VGMVPL was preempted by state law, that finding was *dicta* because it was an alternative basis for dismissal that was unnecessary to the disposition of the unopposed motion. Third, the procedural posture of the Bellino matter was unusual in that the plaintiff was unable to make a motion for reconsideration because Your Honor granted the plaintiff the right to make a motion for leave to amend the complaint. Ultimately, in denying the leave to amend – after reviewing briefing on the issue of preemption – Your Honor did not address the issue again but instead determined that the plaintiff's claims were futile because the conduct at issue took place in 1975, 25 years prior to the passage of the VGMVPL. Id. at Dkt. No. 28. That, and not preemption, was what ultimately disposed of the Bellino matter.

In any event, we respectfully submit that the decision in Black is correct and persuasive and should be adopted by the Court.

10

## **CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny the Defendant's motion in its entirety.

Dated: October 9, 2024
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Michael J. Willemin
    Brooke Payton (admission pending)

    85 Fifth Avenue
    New York, New York 10003
    Telephone: (212) 257-6800
    Facsimile: (212) 257-6845
    mwillemin@wigdorlaw.com
    bpayton@wigdorlaw.com

    *Counsel for Plaintiff*